# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:16-CR-196-MSS-MAP

ALEXANDER CORTES-CASTRO

## DEFENDANT CORTES-CASTRO'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, ALEXANDER CORTES-CASTRO, by and through undersigned counsel and pursuant to U.S.S.G. §3B1.2 and 18 U.S.C. §3553(a), hereby files this Sentencing Memorandum in support of his previously-lodged minor role objection and in further support of a reasonable sentence, which is not greater than necessary to accomplish the purposes of sentencing enumerated in 18 U.S.C. §3553(a)(2). As grounds in support thereof, Mr. Cortes-Castro shows as follows:

## FACTUAL HISTORY

Mr. Cortes-Castro is a Colombian national who was born on May 10, 1981, in Colombia. Mr. Cortes-Castro was born into poverty and lived an underprivileged existence where he and his siblings were abandoned by their father and raised primarily by their mother who sold conchs as a meager means of supporting the family. As a result of their poverty, Mr. Cortes-Castro never

1

attended a day of school.  He is uneducated but not unintelligent and has used his time here in Florida to begin to read and write in both English and Spanish.

Mr. Cortes-Castro, his wife and four children lived together in community of squatters called "Bario Familia en Accion."  Barrio Familia en Accion is a group of homes constructed on stilts and attached to trees in an estuary close to Tumaco Colombia.  The land under the house is submerged, but the house is still accessible by traversing a system of boards nailed to the tops of stumps suspended over the surface of the water.  There is no plumbing or electricity in the home.

Mr. Cortes-Castro was self-employed.  He used a flat-bottomed canoe to gather small conchs and other shell fish found in shallow waters off the shores of Tumaco.  The catch was sold in an open market by family members to individuals and restaurateurs for use in soups and stews.

Mr. Cortes-Castro has no previous experience in the drug trade.  In April, 2016, he was approached by an acquaintance who offered him this job as a deck hand on the vessel.  He accepted.

While on the go-fast vessel, Mr. Cortes-Castro took direct orders from the Captain, Rodriguez-Chasin.  He had no knowledge as to the total quantity of cocaine that they were transporting.  Additionally, he has no

ownership stake in the cocaine nor was he involved in the organization or planning of the transportation operation. He received a $1740 advance payment (5,000,000. Colombian Pesos) with the promise of an additional $23,000 upon the successful completion of the transportation operation. Mr. Cortes-Castro's entire role in the transportation operation was to simply act as a "deck hand" to assist others in the transportation of the drugs from point A to point B by way of a go-fast vessel on the open sea.

Unfortunately for Mr. Cortes-Castro, on April 26, 2016, vessel was captured by the United States Coast Guard.

## **GUIDELINE CALCULATIONS**

Because Mr. Cortes-Castro was involved in a cocaine trafficking conspiracy that involved more than 450 KG, pursuant to U.S.S.G. §2D1.1(c)(1), his base offense level is calculated in the Presentence Report to be a level 38. PSR ¶17. As a result of his qualification for the "safety value" provision, Mr. Cortes-Castro's base offense level is reduced by 2-levels, resulting in an adjusted offense level of 36. PSR ¶¶18, 22. With a 3-level reduction for "acceptance of responsibility" it is suggested that the total offense level is 33. PSR ¶¶24-26. Mr. Cortes-Castro has no prior arrests, convictions, or contacts with law enforcement and, as such, is a criminal history category I offender. PSR¶¶27-29. With a total offense level of 33 and a criminal history category I, Mr. Cortes-Castro's

advisory guideline imprisonment range is 135 - 168 months (11 years, 3 months - 14 years). PSR ¶59.

In the Presentence Investigation Report, Mr. Cortes-Castro is not given any reduction for his role in the offense. PSR ¶20. He objects to not receiving, pursuant to U.S.S.G. §3B1.2(b), a 2-level minor role reduction and a corresponding reduction in his base offense level pursuant to U.S.S.G. §2D1.1(a)(5). *See* PSR Addendum.

## **MINOR ROLE GUIDELINE OBJECTION**

U.S.S.G. §3B1.2 provides for either a 4-level minimal role, 2-level minor role, or a 3-level intermediate role reduction. Specifically, §3B1.2(b) provides for a 2-level reduction if "the defendant was a minor participant in any criminal activity." The determination whether a defendant should receive a role reduction is a fact-based determination and is "heavily dependent on the facts of the particular case." *See* U.S.S.G. §3B1.2 App. N. 3(C). The Application notes provide guidance on distinguishing between a "minimal" and a "minor" participant.

Specifically the application notes provide that a minimal participant is:

> [A person] who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge and understanding of

4

> the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. It is intended that this downward adjustment for minimal participant will be used infrequently.

U.S.S.G. § 3B1.2, App. N. 4.

In contrast to a minimal participant, the Application Notes provide that a minor participant "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal." Additionally, in contrast to the Commission's observation that a "minimal participant" reduction should be used infrequently by a sentencing court, there is no such prohibitive language within the description of a "minor" participant. In fact, the Sentencing Commission has recently as part of the November 1, 2015, amendments to the guidelines expressed the opinion that sentencing courts are not granting mitigating role reductions for low-level offenders as much as the Commission had intended. *See* U.S.S.G. Appendix C, amend. 794.

In the present case, Mr. Cortes-Castro arguably does not qualify for a minimal role reduction but he does qualify for a minor role reduction because he is "less culpable" than most other participants in the conspiracy to which he has pleaded guilty. He is less culpable than the captain of the go-fast vessel, the individual who recruited him to participate in the smuggling operation, the

5

individuals organizing the transportation of the cocaine, the buyers of the cocaine, the sellers of the cocaine, and the drug dealers who will ultimately distribute the cocaine. At most, Mr. Cortes-Castro is equally culpable with the third crewmember on the vessel, Gutierrez Vivanco, thus making him "substantially less culpable then the average participant."

In drug cases such as the present case, a role reduction is directly tied to the base offense level determination under U.S.S.G. §2D1.1. Specifically, §2D1.1(a)(5) provides that "if the defendant receives an adjustment under 3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels." Additionally, the Application Notes to §3B1.2 provide that in drug cases where a defendant's base offense level is determined pursuant to §2D1.1(a)(5), the Court shall additionally reduce that base offense level based on the defendant's mitigating role, whether that be a 4-level minimal participant, a 2-level minor participant, or a 3-level intermediate participant reduction. *See* U.S.S.G. §3B1.2 App. N. 6.

Over the past 14 years, the Sentencing Commission, out of concern that sentencing courts around the country have been under-applying or misapplying the mitigating role reduction, has attempted to provide sentencing

courts added guidance on when it is appropriate to apply the §3B1.2 mitigating role and corresponding §2D1.1(a)(5) base offense reductions.  Specifically, on November 1, 2002, Congress and the Sentencing Commission drastically amended U.S.S.G. §2D1.1 to reduce the sentences for low-level drug conspiracy participants by providing that the offense level specified in the Drug Quantity Table should be applied "except that if the defendant receives an adjustment under §3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." U.S.S.G. §2D1.1(a)(3), U.S.S.G. Appx. C, Amend. 640.  As such, if a drug offender qualifies for either a minimal, minor, or intermediate role reduction, then the highest possible base offense level that the defendant may receive is a level 30.

*Id*.  The legislative history of this amendment provides that:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .
>
> [ ] The amendment modifies §2D1.1(a)(3) to provide a maximum base offense level of 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role). *The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers")*

7

*whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).*

This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in §2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2. The Commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

U.S.S.G. Appx. C, Amend 640 (*emphasis added*).

As noted by the Sentencing Commission as part of the November 1, 2015, amendment to the mitigating role provision, after conducting a recent in-depth national study, the Sentencing Commission found that sentencing courts were still not applying the mitigating role reduction as often as was intended by the Commission. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are

8

differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*See* U.S.S.G. App. C, Amend. 794.

Based on this study's findings, the Commission's clarifying November 1, 2015, amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* It is the intent of the Commission by way of the Amendment to address the Commission's observation "that courts often [incorrectly in the eyes of the Commission] deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id.*

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id.* Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id.* To assist courts and to encourage them to apply the adjustment more frequently, the

Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so the amount of the adjustment." *Id.* Specifically, the Commission's November 1, 2015, factors direct a sentencing court to consider:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2, App. N. 3(C).

Additionally, and of great significance to the present case, the amendment further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

In the present case, the Commissions' clarifying amendment makes it abundantly clear that Mr. Cortes-Castro should receive a 2-level minor role reduction and by consequence a 4-level reduction in his base offense level pursuant to §2D1.1(a)(5)(iii). Factually, Mr. Cortes-Castro was hired by a Colombian drug trafficking organization to act as a courier by transporting cocaine from Colombia to Central America while on-board a go-fast vessel. He was to receive financial compensation for transporting the drugs and he had no ownership or proprietary interest in the drugs. To put it simply, he was being paid to perform the limited task of acting as a "deckhand" during the transportation of the drugs from one country to another by way of the open sea.

Mr. Cortes-Castro's role in the drug trafficking organization was not that of the seller, buyer, manufacturer, organizer of the transportation operation or even the Captain of the go-fast vessel; he was simply being paid along with other crewmembers to perform the task of assisting in the transporting of a vessel containing cocaine from the sellers to the buyers of the cocaine. He is, in fact,

the exact type of low-level participant who should be receiving a mitigating role reduction (*i.e.*, drug courier) that the Sentencing Commission has identified in the 2002 amendment to U.S.S.G. §2D1.1, as well as in the November 2015, amendment to U.S.S.G. §3B1.2.  It is clear from the legislative history of these two amendments that low-level transporters of drugs who are working for a larger drug trafficking organization are the specific type of offender the Commission has always intended should receive a minor role reduction and corresponding §2D1.1(a)(5) adjustment in their base offense level.

The fact that a large drug trafficking organization is involved in the distribution of cocaine in amounts larger than the amount of cocaine Mr. Cortes-Castro and his indicted co-defendants were apprehended with does not in any way preclude Mr. Cortes-Castro from being eligible for a mitigating role reduction.  As noted in the Commission's clarifying November 2015, amendment:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under the guidelines. *For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs* and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stores may receive an adjustment under the guidelines.

1

USSG §3B1.2, App. 3(A) (emphasis added).

Additionally, in analyzing the clarifying, non-exhaustive list of factors in the proposed amendment, it is clear that each and every factor would support Mr. Cortes-Castro receiving a mitigating role reduction. As a simple courier or transporter of drugs, Mr. Cortes-Castro:

(i) He had little or no degree of understanding of the scope and structure of the overarching criminal activity; he was simply instructed to assist in the transportation of the cocaine from point A to point B.

(ii) He had no role in the planning or organization of the criminal activity, including no role in the planning or organization of the transportation operation itself.

(iii) He had no decision-making authority, nor did he have any influence regarding the exercise of decision-making authority. He simply followed the directions of others, including direct orders from the Captain of the go-fast vessel.

(iv) The nature and extent of his activity and participation was limited to his assistance with the transportation of packages of cocaine from Columbia to Central America; he had little or no responsibility or discretion in performing these transportation functions, and at all times during the transportation took direct orders from the Captain of the vessel.

(v) The only benefit Mr. Cortes-Castro was to receive for his transportation function of a single load of cocaine was $25,000 which is especially minimal in light of the street value of the drugs he was transporting.

(vi) He had no proprietary interest in the criminal activity and was simply being paid to perform certain tasks (*i.e.*, assisting in the transportation of drugs).

Therefore, based upon the factors this Court is directed by the Sentencing Commission to specifically consider in determining when to apply a mitigating role reduction pursuant to U.S.S.G. §3B1.2, this Court should find that Mr. Cortes-Castro qualifies for a 2-level minor role reduction and adjust his base and total offense levels accordingly.

## **REQUEST FOR A REASONABLE SENTENCE**

In light of the mitigating history and characteristics of Mr. Cortes-Castro as well as the facts and circumstances surrounding the non-violent nature of his offense, it is respectfully suggested that a sentence of 70 months to be followed by a 5-year term of supervised release will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. 3553(a).

Mr. Cortes-Castro is a 35-year-old impoverished Colombian national who is the primary financial supporter for his law wife and their children. As a child, Mr. Cortes-Castro was raised with his siblings by a single mother suffering from extreme poverty. He can neither read nor write and has worked since he was a child.

Mr. Cortes-Castro has no prior criminal history or contacts with law enforcement; he became involved in the present non-violent activity as a means to supplement his meager income. In exchange for the promise of $25,000 - Mr. Cortes-Castro agreed to act as a "deckhand" on a go-fast vessel loaded with more than 450 KG cocaine while the vessel transport the cocaine from Colombia to Central America. As noted above, his role in this large criminal drug trafficking conspiracy was minor in comparison to other participants in the drug trafficking operation.

While Mr. Cortes-Castro' offense is non-violent in nature, it cannot be disputed that he was involved with a crime involving a large quantity of cocaine, which would support the imposition of a significant term of incarceration. However, a sentence greater than 70 months' imprisonment to be followed by a 5 year term of supervised release would be "greater than necessary" to address the seriousness of Mr. Cortes-Castro' criminal behavior, especially in light of his history and characteristics, his motivation for becoming involved in this unlawful activity, and his mitigating role in the offense.

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all parties of record this 3rd day of April, 2017.

*/s/ Mark Ciaravella*
Mark Ciaravella
Florida Bar Number 46108
1110 North Florida Avenue
Tampa, Florida 33502
Telephone 813-221-1640
Facsimile 813 464 7810
Email: mwc@Ciaravella.com
*Counsel for Mr. Cortes-Castro*